## Mullen, Trustee, v. Doyle et al., Appellants.

*Trusts and trustees—Purchase by trustee at his own sale.*

Counsel for a mortgagee who was foreclosing the mortgage on certain trust property, informed the trustee that he thought the mortgagee would be glad to have any one take the property who would pay sufficient in cash to leave only the principal of the mortgage debt unpaid. The trustee did not communicate this information to his cestui que trust, but bought in the property and took title in the name of a third person for himself individually. *Held*, that the conduct of the trustee was such a failure of his full duty as trustee, as, irrespective of intent and of, any actual fraud, would prevent him from acquiring title for himself as against his cestui que trust.

*Statute of limitations—Notice to cestui que trust.*

Where a cestui que trust has no notice of a purchase by his trustee of the trust property until the filing of the trustee's account in which the rents of the property were omitted, the statute of limitations will not begin to run against the cestui que trust until that date.

*Equity—Pleading—Burden of proof.*

On a bill in equity by a cestui que trust to compel a conveyance of trust property, bought by his trustee in the name of a third person at a sheriff's sale, a failure to prove the main averments of the bill that there was an express agreement and a purchase with the trust funds, is immaterial where the bill also avers the legal incapacity of the trustee to deal with the title to be foreclosed by the sheriff's sale, because he was a trustee. In such a case the averment put the defendant upon notice that the burden of proof would be upon him to sustain the purchase.

Argued Jan. 4, 1892. Appeals, Nos. 253 and 277, Jan. T., 1891, by defendants, John I. Green et al. Administrator,

d. b. n., of Palneck Doyle, deceased, and Guarantee Trust and Safe Deposit Co., guardian of minor heirs of said Doyle from decree of C. P. No. 4 of Phila. Co., March T., 1885, No. 461, in favor of plaintiff, Michael Mullen, trustee of Robert F. Simpson and wife, on a bill in equity. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Bill in equity for conveyance of real estate.

The bill averred that by a deed dated Nov. 8, 1884, Robert F. Simpson and wife appointed Michael Mullen the trustee, substituted in place of Patrick Doyle, deceased, who was appointed by the said Robert F. Simpson et ux. trustee. That the said Robert F. Simpson was seized in fee of real estate in the city of Philadelphia, and on the 6th of March, 1874, the said Simpson and wife conveyed the same unto Patrick Doyle in trust, inter alia, that the said Doyle should collect all the rents, pay all taxes, encumbrances and repairs, and pay over to the said Robert F. Simpson and wife annually a sum not larger than $5,000, and to apply the balance to the net income to satisfying the liens upon the real estate. That in case of the death of said Doyle the said Simpson and wife might by deed appoint a successor in the trust. That the said Doyle died January 25, 1884, and the said complainant was substituted as trustee under the terms of the deed of March 6, 1874. That letters of administration upon the estate of said Doyle were granted on February 13, 1884, to Margaret S. Doyle, one of the respondents, and the said Doyle died intestate, leaving to survive him his widow, since deceased, and four minor children, viz., Edward L. Doyle, Mary deS. Doyle, Joseph H. Doyle and John Doyle, for whom the Guarantee Trust and Safe Deposit Company is guardian. That among the real estate conveyed by deed of March 6, 1874, is all that certain piece of ground and buildings thereon situate on the northwest corner of Ninth and Arch streets (known as the Museum building). That at the time of said conveyance the said premises were subject to a mortgage given by said Simpson to Josiah W. Harmer, trustee, etc., to secure the repayment of $40,000. That judgment was obtained upon said mortgage in common pleas, No. 3, as of March term, 1879, No. 379, and

the premises were sold by the sheriff to Jarvis Mason on June 2, 1879, who on June 9, 1879, conveyed the same to John I. Green, one of the defendants.

The bill further alleged that the sheriff's sale had been procured by the deceased trustee Doyle and Sylvester J. Megargee under an agreement by which the purchase money should be furnished from the funds of the trust estate or raised on the security of Green's title, and that when all such advances were repaid the premises should be reconveyed to the trust estate. The bill further averred that if any advances had been made on the security of Green's title they had long since been repaid.

The bill also charged:

" That the said Patrick Doyle . . . . was under a legal incapacity to deal with the title to be produced at the sheriff's sale of the premises in question, because the said Doyle was the actual trustee . . . . of the title which was divested by the sale, which sale your orator charges it was within the power of the said Doyle . . . . to prevent."

The bill prayed for conveyance and an account of income.

The answers of the respondents denied that the sale had been procured by the trustee, and that the property had been purchased with trust funds or funds raised on the security of Green's title, and also denied that there was any agreement to give the trust estate the benefit of the purchase. The answers further alleged that the trust estate was at the time of the sale indebted to the trustee; that the sale took place because the interest was in arrear and there were no funds in the estate, and that the purchase was made from Jarvis Mason by the trustee with his own moneys, and the title taken in the name of Green for his individual benefit.

The case was referred to Henry M. DuBois, Esq., as master, who reported in part as follows:

" After the property was put up for sale under the alias writ, Doyle called to see Mr. John G. Johnson, counsel for the holders of the mortgage, to ascertain what could be done about the matter. The substance of the interview which Mr. Johnson thought took place before the sheriff's sale, was to inform Doyle that the holders did not want to buy the property or to own it, but if the holders did buy it, and somebody came forward within a very limited period of time and paid everything that

was necessary to be paid, including counsel fee, to cut down the encumbrance to the amount of the principal of the mort-gage, then Mr. Johnson was sure that the company would be glad to have such person take the property off their hands. The substance of what Mr. Johnson told Doyle was that the holders of the mortgage did not want to buy, and that he felt sure that the holders would be very willing to do this. O'Byrne was told by Doyle that Green would take the title as trustee, and O'Byrne, in Doyle's presence, told Simpson that Green would take the title as trustee. Simpson seemed satis-fied, as he was assured by Doyle that all that Green would have to do with the property would be to hold and manage it, and when it cleared itself it would go to Mrs. Simpson and children.

" The sheriff's sale took place. The attorney for the mort-gagee sent his assistant to the sale with instructions to bid the property up to the amount of the principal, interest, taxes and costs, and that if any one else bid more, then to let the property go. No one else did bid more, and the property was bought in by the mortgagee on June 2, 1879. After the sale, Doyle told Mr. Johnson that he would be willing to take the property and to pay all that was necessary to be paid down to the principal of the mortgage, and that he would take the title in the name of John I. Green. Doyle said that he had not the money himself, that the estate was indebted to him, and that he would have to protect himself by buying the property and doing the best he could do with it. Mr. Jarvis Mason, the trust officer of the trust company, the holders of the mortgage, took the deed of the property from the sheriff, and on or about June 19th, 1879, Doyle paid to the mortgagee the sum of $8,331.24, being the amount of interest, taxes, expenses and costs above the principal of the mortgage. And Mr. Mason, representing the trust company, then conveyed the property to John I. Green, who gave a purchase-money bond and mort-gage to the company for $40,000, and Green held the title only for Doyle and gave him a declaration of trust, dated June 19, 1879, to that effect, which has not been recorded. After the sheriff's sale, Doyle called on Owens for advice as to what course to take to establish the fact that Green was new trustee, having no interest as owner in the property. Mr. Owens ad-vised a declaration of trust to be executed by Mr. Green.

Doyle then consulted Mr. O'Byrne, who directed such a declaration to be drawn. Mr. Owens prepared such an instrument in favor of Mr. Simpson and wife, the paper was given to Mr. Doyle, and counsel advised him to see Mr. Green and have it executed. It did not appear that the instrument was ever executed. Doyle disavowed any ownership in the building to counsel for trust estate.

" The original cost of lot at Ninth and Arch streets, in 1868, with buildings of no value thereon which were subsequently torn down, was $60,000. That its value and that of the new buildings in 1879 was $100,000, and now valued at $150,000. Doyle did not make any effort to borrow money on mortgage, which he might have done, or to sell some of the remaining real estate and apply the proceeds to save the Museum property. No. 706 North Sixteenth street afterwards sold at sheriff's sale for $6,000 on a judgment for $4,806. (See C. P., No. 2, M. T., '79, No. 308, complainant's testimony, page 39.) The amount of interest due at time of the foreclosure of the mortgage of $40,000 was $3,120, and only a part of which, if paid, would have prevented the sheriff's sale.

" Simpson did not know that John I. Green held the Museum property under a declaration of trust for Doyle, until he read it after Green had produced it before the examiner, during the taking of testimony in this cause. A final account was filed March 6, 1885, by the administrator of Doyle, after resistance, which has not been referred to an auditor, and by this account no rents for the Museum building were accounted for after the sheriff's sale of said premises, although same had been rented.

" On November 8, 1884, Simpson and wife appointed Michael Mullen substituted trustee for them in place of Patrick Doyle, deceased, under the terms of deed of trust of March 6, 1874."

The master recommended a decree of conveyance by Green, and charged Doyle with rent since the sheriff's sale, and refused to allow credits for commissions paid for collecting rent. Exceptions were filed by appellants, which were dismissed, and a decree entered by the court, in an opinion by PENNYPACKER, J.

*Errors assigned* were (1) in holding that the failure to communicate to the cestui que trust the statement of mortgagee's counsel, recited above, rendered the purchase invalid; (3) in

entering a decree on grounds not alleged in the bill; (4) in not holding that plaintiff's claim was barred by the act of April 22, 1856; (7) in decreeing a conveyance; (8) in charging Doyle with rents received since the sheriff's sale, and refusing to allow him credit for commissions paid real estate agent for collecting rents; and (9) in not dismissing the bill.

*Frank P. Prichard* and *Samuel Gustine Thompson,* for appellants.

*Robert H. Neilson* and *Geo. Tucker Bispham,* for appellee.

OPINION BY MR. JUSTICE MITCHELL, March 14, 1892.

The question of pleading is not important in the case, because, although complainant failed to prove the main ground of his bill, the express agreement and the purchase with the trust funds, as averred in section eight, yet he set out as a ground of relief in section nine the legal incapacity of Doyle to deal with the title to be produced by the sheriff's sale, because he was trustee. So far as respondents were concerned this averment of the bill put them upon notice that the validity of Doyle's acquisition of this title while he was trustee would be questioned, and, of course, that the burden of proof would be upon them to sustain a purchase which, if valid at all, could only be so under some exception to the rule that a trustee shall not have an advantage to himself to the detriment of the trust estate.

Whether the situation which led to the sheriff's sale was of the trustee's own making, or whether he could have prevented the sale, are questions of some difficulty, upon which the auditor of the first account and the master in the present suit differed. It is not necessary for us to consider which is right, nor how far the first finding may be conclusive upon the second. Conceding both points to be decided in appellant's favor, and that, up to the point of the sale, Doyle, as trustee, was within the exception recognized in Fisk v. Sarber, 6 W. & S. 18, there still remain the circumstances of the sale itself, and Doyle's subsequent conduct in regard to the title. Though there was no express agreement to purchase for the trust, there is evidence satisfactory to the master and the court below that Simpson believed such was to be the case, and that the conduct of Doyle aided in producing that belief. The master finds ex-

pressly that Simpson was told by O'Byrne in Doyle's presence that Green would take the title as trustee, that a declaration of trust by Green in favor of Simpson's wife and family was prepared by counsel, and Simpson supposed it was executed, that the declaration of trust for Doyle was not put on record, that Simpson did not know of it until it was produced before the examiner in this suit, and that the first adverse act of Doyle to put Simpson upon notice and inquiry was the failure to include the rents of the property in the account filed in 1885. But aside from, and in addition to all this, the undisputed fact is that Doyle did not communicate to his cestui que trust the terms upon which the property could be regained after the sale. While it is clear that no agreement was made by the counsel for the mortgagee, it is equally clear that he expressed a belief as to his client's willingness to make certain terms which proved to be correct, and was subsequently carried out by his client. This option, prospect, opportunity, whatever it may be called, however far short of an agreement, was still an advantage to which the cestui que trust was entitled. It practically gave the party who knew of it a chance to become the purchaser on a credit of forty thousand dollars to be left in mortgage on the property, and on a cash outlay of only eight or nine thousand, while outside bidders were, so far as they knew, required to purchase for cash in full. Of this chance Doyle took advantage. It may be that even with knowledge of it Simpson could not have profited by it. But, according to the master's report, there was still some other trust property which might possibly have been sold or mortgaged for enough to save this, or in other ways he might have raised the money necessary. Whether he could or not is unimportant, he was entitled to an opportunity to try. The withholding of such opportunity was a failure of his full duty as trustee, that, irrespective of intent and of any actual fraud, prevented Doyle from acquiring the title for himself as against his cestui que trust.

The question of the statute of limitations does not arise. Under the circumstances found by the master, already quoted, the statute did not begin to run until the filing of the account in March, 1885.

Decrees affirmed at cost of appellants.